27  139
75  229
76    6
27  139
79  230
27  139
80  125
80  340
81  229
81  427
27  139
83  496
84  618
84  640

JOHN CHAMBLEE AND OTHERS V. HORACE TARBOX.

Ordinarily, in a chain of conveyances, similarity of name is sufficient evidence for the identification of a vendor with the purchaser in a preceding deed.

In this case, the coincidence of the given name of a married woman with that of a single woman, to whom in consideration of marriage land had been conveyed, was held sufficient, in connection with possession of the original title papers, and with recitals in the deeds, to establish a chain of title dependent for its continuity upon the question whether the married and the single woman were one and the same person, there being no evidence tending to a different conclusion.

Though recitals in deeds are, ordinarily, admissible in evidence only against parties and privies; yet, when the recital is of a matter of pedigree, which includes the facts of *birth, marriage* and *death*, it is evidence even against strangers to the deed.

Where the disproportion between the value of property and the price for which it is sold is enormous, slight additional circumstances will justify the inference that the sale was fraudulent; and, in order to authorize the interposition of the court, it is not necessary that such circumstances lead to the conclusion of actual fraud on the part of the purchaser.

See the opinion for considerations influencing the action of courts in rescinding sales of property on the ground of gross inadequacy of price and other circumstances; and for distinctions taken between the rights of the original purchaser and those of his vendees for value without notice.

Though a party cannot insist upon the reversal of a judgment, on account of the failure of the court below to give instructions which he neglected to ask; yet this rule is not applicable when the charge given by the court upon the questions involved is itself erroneous.

When a deed to land made by a sheriff under execution sale was impeached for fraud, on the ground of gross inadequacy of price and other circumstances, it was error for the court, by its instructions, to confine the jury

to the isolated question, whether there was an unfair combination between the sheriff and the purchaser to sell and purchase the land at less than its value, and to exclude from their consideration the other circumstances affecting the question of fraud.

APPEAL from Falls.   Tried below before the Hon. John Gregg.

Trespass to try title, instituted by the appellee against John Chamblee, William M. Newton, and William Hinton, defendants, for the recovery of one-fourth of a league of land in Falls county.

The plaintiff deraigned his title from the defendant Chamblee by virtue of sheriff's sale under execution, made on the 6th of February, 1844, the nature of which execution is explained in the opinion of the court.   The purchaser at the sheriff's sale was John K. Lyle, to whom the land in controversy, consisting of 1107 acres, was struck off at his bid of five dollars.   On the 1st of March, 1844, Lyle conveyed the land to Lyman Tarbox, expressing in his deed a consideration of five hundred dollars.   Lyman Tarbox, by deed of date October 7, 1848, conveyed the land to Jane Carroll, reciting as the consideration his approaching marriage with her.   The remaining link in the plaintiff's title consisted of a deed dated April 1, 1853, from Lyman Tarbox and his wife Jane M. Tarbox, to the plaintiff.   Besides these two latter deeds, no evidence of the identity of Jane M. Tarbox with Jane Carroll was introduced.

The defendants pleaded not guilty, the limitations of three and five years, and fraud in the sheriff's sale in which the plaintiff's title originated; alleging gross inadequacy of price, and the other circumstances adverted to in the opinion, in support of their charge of fraud, and tendering to the plaintiff the purchase money paid by his remote vendor, Lyle, with interest.

The cause came to trial at the Fall Term, 1859.   The plaintiff rested his title upon the conveyances already mentioned, together with a transcript of the judgment, proceedings, and executions in the case of Jesse Tinnin v. John Chamblee, by virtue of which the sheriff's sale of the land was made.   He further proved that the defendants Newton and Hinton claimed under Chamblee.

The defendants proved by two witnesses that at the time of the sheriff's sale, in 1844, the land was worth one dollar per acre,

though one of the witnesses stated on cross examination that he could not say it would have brought that much.

The defendants asked the court to charge the jury that gross inadequacy of price might alone be sufficient evidence of fraud; that the recitals in the deed of Lyman Tarbox to Jane Carroll, and in that of Lyman Tarbox and his wife, Jane M. Tarbox, were not evidence that Jane Carroll and Jane M. Tarbox were the same person; and that if the plaintiff had failed to produce a complete chain of title from the sheriff down to himself, he could not recover. These charges were refused by the court.

The court instructed the jury that the deeds offered in evidence by the plaintiff were sufficient to establish his right to recover, unless the evidence proved fraud in the procurement of his title. That, in order to decide whether or not there was fraud in the procurement of the plaintiff's title, the jury would look to all the circumstances attending the sale, and if there was any unfair combination between the sheriff and the purchaser, to sell and purchase the land for less than its value, they should find for the defendants. That if there was no such combination, they would find for the plaintiff. That in this case, mere inadequacy of price was not sufficient to establish fraud, and in order to find fraud, the jury must have other circumstances throwing suspicion on the fairness of the sale, besides the smallness of the sum given for the land.

Verdict and judgment in favor of plaintiff. Motion of defendants for a new trial overruled.

*Barziza & Gould*, for the appellants.—It is contended that the court erred in refusing to instruct the jury that the recitals in the deeds offered by plaintiff were no evidence of the identity of Jane Carroll and Jane Tarbox, and in instructing the jury that the deeds were sufficient evidence to entitle plaintiff to a verdict. The recitals in a deed are only evidence against parties and privies, and do not bind strangers. (1 Greenleaf Ev., sec. 23, and note 2.) Whether Jane Carroll and Jane M. Tarbox were the same person, was a question of fact for the jury. It was material to make out the chain of plaintiff's title that they should

appear to be the same person; otherwise his own evidence proved an outstanding title in Jane Carroll. It certainly was not for the court to assume, as it did, that Lyman Tarbox and Jane Carroll had intermarried, taking that question of fact wholly from the jury. Suppose Jane Carroll had died, and certain persons assuming to be her heirs had conveyed to plaintiff. Proof of the heirship would have been essential; just so with the proof of the marriage or identity of persons in this case. Identity of name does not in some cases dispense with proof of the identity of the person. If the charge be correct, then the recital of an intention is conclusive evidence that it was carried out; for the deed from Lyman and Jane M. Tarbox contains nothing to show that she had been formerly Jane Carroll.

The court erred in refusing to instruct the jury that they were at liberty to infer fraud from gross inadequacy of price. That inadequacy of price, although not *per se* a *ground* of relief, may be so great as to shock the conscience or raise a presumption of fraud, in cases of ordinary sales, is well settled. The court doubtless proceeded on the ground that sheriffs' sales were an exception to this rule. In support of this proposition, the appellee has cited various authorities; but none which I have been able to find that come fully up to the question. In Hansford v. Barbour, 3 A. K. Marshall, 515, there was evidence tending to show how the sale was made, and the court say that inadequacy of price was not sufficient under the circumstances of the case. In Lessee of Cooper v. Galbraith, 3 Wash. Cir. C., 546, they decide that inadequacy of price is no ground for relief where the sale was fair and legal. In 2 Green. Ch., 460, the inadequacy only amounted to one-fourth of the value of the land, and the court say that the facts tended to show why the land brought no greater price. In Stockdale v. Young, Rice's Eq., p. 3, the court proceed apparently on the idea that inadequacy is no *ground* to set aside any contract. The evidence also showed the land to be in litigation. In short, I have found no case where gross inadequacy of price was set up, not as in itself a ground of relief, but as an evidence of fraud, and where there was no other evidence as to the circumstances attending the sale, where the court have expressly decided

that it was not sufficient evidence to authorize a jury to infer fraud. It cannot be denied, however, that the general tendency of the authorities is in that direction, and that in some cases the courts have enunciated it as the law. In most of the States, the judgment debtor is protected by appraisement laws; or by laws giving him a power of redemption within a certain time. Here he has no such protection. The sheriff is not even bound to notify the defendant that his land is levied on. Under these circumstances, and under our system where fraud is a question of fact for the jury, it is submitted that the jury should be left at liberty, if they see fit, to infer fraud from very gross inadequacy of price. Whilst the policy of the law is to give certainty to titles through judicial sales, the reason of the policy is to increase the price at such sales; and where the price paid, as in the present case, is merely nominal, the same reason would lead to the discouragement of such sales. In Allen v. Stephanes, 18 Tex., 658, Judge Hemphill says, "It might be difficult to fix any precise limit at which inadequacy of price would of itself be sufficient cause to set aside a *judicial* sale; but it would seem that in some cases the disproportion might be so shocking and enormous as to justify a rescission of the sale."

Inadequacy of price has been held to be good grounds for refusing relief to a purchaser at sheriff's sale. (Clement v. Reid, 9 Smedes & Marshall, 535; Franklin v. Osgood, 2 Johnson Ch., p 1.) In this case the plaintiff, though not seeking equitable relief, was endeavoring to enforce his title.

*Aycock & Stewart*, for the appellee.—There is no sufficient proof of fraud upon which to vacate the execution sale. The isolated fact upon which that charge is made is the gross inadequacy of the price paid by the purchaser there. There is no proof of any collusion, any combination to prevent fair competition, any artifice to make the land sell for less than its value. It occurred when lands were little valued, and when titles were obscure. This may account for the small price it brought. But inadequacy of consideration *alone*, is no ground upon which to set aside a sheriff's sale. (Hansford v. Barbour, 3 A. K. Marshall,

515; 3 Wash. C. C., 546; Stockdale v. Young, Rice Ch., 3; Carson's sale, 6 Watts., 140; White v. Floyd, Spears Ch., 351; Waller v. Tate, 4 B. Monroe, 354; Reed v. Brooks, 3 Littell, 128; Stockton v. Owens, Littell's Selected Cases, 256. Kilby v. Haggin, 3 J. J. Marshall, 213.)

If that execution sale were voidable on account of fraud, it is not void. In our practice, defendants below might have so framed their answer as to have invoked the court's equitable power to set aside the sale, probably even against appellee, who is a remote vendor of the first purchaser at execution sale, chargeable only with notice of the amount paid said first purchaser, that being patent in one of the deeds he claims under. But have they done so? To do this, the answer should contain every allegation which would be necessary in a proceeding instituted for the very purpose. The last amended answer is the only one that can lay any claim to such qualities. That would be bad on general demurrer. No specific charge of fraud is made. No act of sheriff or purchaser constituting fraud, is alleged. No notice of the vaguely charged fraud is averred against the appellee. The bare statement that the land was sold for less than its value, is the only material issuable fact alleged. Even if that sole fact were sufficient to authorize a jury to infer fraud, still its statement is no allegation of the facts necessary to be alleged in the pleading. They are wanting, and the evidence can afford no basis for a decree without the proper pleading.

MOORE, J.—Similarity of name is said to be some evidence of identity. (1 Greenl. Ev., sec. 575, n. 5.) It can not be questioned that this alone is ordinarily sufficient evidence of identity of a purchaser in a chain of conveyance as the subsequent vendor. Although this case can not be said to come fully within this rule, and it would have been more satisfactory if the marriage of Lyman Tarbox and Jane Carroll had been proved; or that Jane Carroll, to whom the land was conveyed by Lyman Tarbox, and Jane M. Tarbox, who subsequently joined him in the conveyance of it to the appellee, was the same person; yet, we think the partial similarity of name, the possession of the original title

papers, and especially the recitals in the deeds showing that the land was conveyed to Jane Carroll in consideration of her approaching marriage with Lyman Tarbox, and that by the deed to the appellee Jane M. Tarbox is shown to be his wife, and as such joins in the conveyance, were properly regarded by the court below, in the absence of all testimony tending to induce a different conclusion, as sufficient to establish appellee's chain of title. Recitals in deeds are, ordinarily, said to be evidence only against parties and privies; but when the recital is of a matter of pedigree, which includes the facts of *birth*, *marriage* and *death*, it may be used as original evidence even against strangers. (1 Greenl. Ev., sec. 104.)

Appellants requested the court to charge the jury, that gross inadequacy of price alone is sufficient evidence of fraud to set aside a sale. It has been frequently intimated by high authority, that when the inadequacy of consideration was so gross as to shock the conscience, it might be regarded as of itself evidence of fraud. (Osgood v. Franklin, 2 John. Ch. R., 1; St. Eq., sec. 246.) It is not necessary, however, in the present case to determine whether the true rule upon the subject can be carried to this extent, especially in sales by public officers; though the great hardship and injury that might sometimes result from its denial will appeal for its support, in proper cases for its application, with most persuasive force. When the disproportion between the price and the value of the property is enormous, the cases all agree that slight additional circumstances will justify the inference that the sale is fraudulent. (Allen v. Stephanes, 18 Tex., 658.) And it is not necessary, to authorize the interposition of the court, that these circumstances lead to the conclusion of actual fraud on the part of the purchaser. If the bargain is one which no man in his senses would make, and that no honest and fair man should accept, and there are circumstances attending the sale which may have operated to prevent the property from bringing a higher price, although at the time they may in fact have been unknown to the purchaser, the sale will be regarded by the court as, in its legal sense, fraudulent.

In the sale by the sheriff, under which the appellee claims the

10*

land in controversy in this case, there appears to be a number of circumstances which, in connection with the gross inadequacy of the price for which the land was sold, would, if the suit were between the original purchaser and defendant in execution, and its prosecution had not been unduly delayed, have authorized its rescission. Two executions in favor of the same plaintiff were levied upon the land. Under the first it was directed to be sold with appraisement, and it was offered for sale first under it, but no one would give two-thirds of its appraised value. It is not unreasonable to suppose that bidders at the sale may have believed that this would delay the sale under the second execution, or, at least, that there would be a lien on the land in favor of the first execution. The last execution was for cost in a case brought before the expiration of the appraisement law. It may have been a matter of doubt with some whether this law was not, also, applicable to it. The levy endorsed upon the execution was, to say the least, very vague and uncertain; and if the land was susceptible of division, (and from its description we must infer that it was,) the levy was grossly excessive, so much so that we might reasonably conclude this alone would have prevented a sale of the land for a reasonable or fair price.

It may be said that these objections cannot be insisted upon for the reversal of the judgment, because appellant failed to ask the court below to charge upon them. And this no doubt would be correct, if the charge given by the court was, in itself, unexceptionable. It is well settled that a party cannot complain of the failure of the court to give the jury instructions which he has neglected to ask. And if the jury in this case had been left by the court free to act upon the facts to which we have adverted as tending, in connection with the inadequacy of the price for which the land was sold, to prove fraud, the appellant would have had no cause to complain. But the jury were in effect instructed that these things were entitled to no consideration, and should have no effect upon their verdict. The verdict was made, by the charge of the court, to depend exclusively on the isolated question, whether there was any unfair combination between the sheriff and purchaser to sell and purchase the land at less than its value.

Chamblee v. Tarbox.

There was not only a failure to instruct the jury as to the legal conclusions that were deducible from the most material portions of the evidence before them, but by the charge it was excluded from their consideration.

Notwithstanding the error in the charge, it is a matter of doubt whether appellant is entitled to a reversal of the judgment. However inadequate the price for which the land was sold may have been, the sale was not void, but only voidable. And it may admit of serious consideration, whether after so great a length of time, without in any way attempting to excuse his delay, the appellant can interpose his equities to defeat the legal title. If he could, against the original purchaser, it is a matter of still more doubt whether he can do so against a subsequent one, who may have purchased without either actual or constructive notice of any defect in his vendor's title, or of appellants' equities. If appellee, or those under whom he claims, were not purchasers for a valuable consideration, or without notice of appellants' equitable right, he stands in no better attitude than the purchaser at the sheriff's sale. Still he holds the legal title, and the burden of proving its defects is upon the party attacking it. In this respect the special answer of the appellants, though not excepted to, is defective, and the testimony cannot be said to be either full or satisfactory, and would be altogether defective if it did not appear that appellant, or those claiming under him, were in possession of the land previous to the commencement of this suit, and possibly may have been so at the time appellee and his vendors purchased, who may thereby have been put upon enquiry as to appellant's title. This view of the case seems, however, to have been overlooked upon the trial below, both by the court and the parties; and as its result there was made to turn upon an erroneous charge of the court, it is thought to be more consonant with the ends of justice to remand it for another trial. It is believed that, by doing so, the questions at issue will be presented in a more satisfactory manner, and such a result will be attained as the law and facts warrant.

The judgment is reversed, and the cause remanded.

Reversed and remanded.