COTTON STATES BUILDING COMPANY v. J. T. JONES AND WIFE.

No. 998.    Decided May 9, 1901.

**1.   Charge—Affirmative Error.**

A charge which instructed the jury to find for plaintiff if either of two features of a contract was found to be usurious, thus ignoring an issue as to whether the usury, if any, connected with one of such features had been purged by a new agreement, was affirmatively erroneous, and no request for an instruction was necessary to make such error available for reversal. (Pp. 500, 501.)

**2.   Usury—New Agreement Purging.**

A borrower who had made, with a building association, a contract usurious with respect to certain payments to a contingent fund, could make a valid contract purging the original of this usurious feature but binding him to carry it out in all other respects. (Pp. 501, 502.)

**3.   Same—Consideration—Interest on Usurious Contract.**

An imperfect or nonenforcible obligation may afford sufficient consideration to support a new promise; thus a contract to carry out a previous usurious undertaking in all respects except as to the usurious part of it, was not without sufficient consideration in undertaking to pay the principal and lawful interest, with-

out deducting from the principal payments of interest made before the contract
was so purged of usury.· (Pp. 501, 502.)

**4. Building Association—Usury—Payments on Stock.**

See this case as to question of usury in payments on stock of a building associa-
tion by a borrower. (P. 502.)

ERROR to the Court of Civil Appeals for the Second District, in an
appeal from Denton County.

Jones and wife sued the building company and obtained judgment.
Defendant appealed and on its affirmance obtained writ of error.

*Moore, Park & Birmingham*, for plaintiff in error.—Payments on
shares of stock and membership fees in a building association can not
be considered in determining whether or not a loan is usurious, but the
question of usury must depend solely upon the amount of interest
contracted to be paid. Building Assn. v. Abbot, 85 Texas, 220; Asso-
ciation v. Lane, 81 Texas, 369; Loan Assn. v. Everheart, 44 S. W.
Rep., 885; Association v. Griffin, 90 Texas, 480; Crenshaw v. Hedrick,
47 S. W. Rep., 71.

The fact that one takes stock in a building association for the sole
purpose of obtaining the privilege of borrowing from it and that such
purpose is known to the association does not of itself make the sale
and purchase of the stock a scheme or device to enable the association
to collect usurious interest. Leary v. Building Assn., 49 S. W. Rep.,
632; Association v. Logan, 33 S. W. Rep., 1088; Association v. Lane,
81 Texas, 369; Building Assn. v. Bryan, 54 S. W. Rep., 377; Endl. on
Building Assn., 2 ed., sec. 55.

If the purchase of the shares of stock conferred on Jones the right
to participate in the profits of the company and was so intended by
the company, the sale of such stock could not be a sham or device to
cover up usury. Investment Co. v. Stone, 46 S. W. Rep., 67; Abbott
case, 85 Texas, 220; Jackson v. Cassidy, 68 Texas, 288.

The refunding of usurious interest that has been received and its ac-
ceptance by the payor under an agreement that only legal interest
shall thereafter be charged, frees the obligation from the taint of usury
and renders both principal and such legal interest collectible. Associa-
tion v. Fortassain, 23 S. W. Rep., 496; Stout v. Bank, 69 Texas, 384;
Whitlow v. Culwell, 40 S. W. Rep., 642; Phillips v. Building Assn.,
53 Iowa, 719; Webb on Usury, secs. 481-484.

*Bottorff & Ponder*, for defendants in error.—The court did not err
in ignoring the purging contract and in refusing to submit· the special
instruction asked by appellant, because it appeared upon the face of
said contract, and from the undisputed evidence adduced, that said con-
tract was not founded upon any valuable consideration, and, if the
original contract was usurious, the usury therein was carried into the
new contract and rendered it usurious and ineffective. 2 Posey U. C.,
146; Gilmer v. Loan Co., 52 S. W. Rep., 851; Loan Assn. v. Fortassain,

23 S. W. Rep., 496; Loan Assn. v. Biering, 86 Texas, 476; Loan Assn. v. Seebe, 40 S. W. Rep:, 875 (a writ of error denied by the Supreme Court); Jones v. Risley, 32 S. W. Rep., 1027; Jackson v. Cassidy, 68 Texas, 282; Sayles' Stats., art. 3106; Reed v. Brewer, 36 S. W. Rep., 99; Helms v. Crane, 23 S. W. Rep., 392; Reynolds v. Reynolds, 18 S. W. Rep., 377; 1 Beach on Con., secs. 157, 158, 165, 173; Vanderbilt v. Schreyer, 91 N. Y., 400; Bank v. Blair, 44 Barb., 652; Railway v. Clark, 92 Fed. Rep., 974; 39 Texas, 367; 18 Texas, 807.

Having shown that said shares issued to appellee were illegal, fictitious, and fraudulent, the same having been issued for the purpose of evading the usury law and with no intent to make J. T. Jones a stockholder in good faith, said shares can not be interposed for the purpose of postponing the application of the payments made thereon to the discharge of the loan for an indefinite period of time, or to such time as the appellant may please to declare said shares to be mature.

Should it be conceded that said shares are not otherwise illegal and fictitious, all of the transactions between the parties being but the result of a scheme and device on the part of appellant to conceal usury, and usury having been shown by the evidence, all of the interest payments made by the appellees have been applied on the principal by the operation of law; which said payments, together with the payments on the stock and payments into the contingent fund, are more than sufficient to discharge the principal debt. Therefore, appellees say that they are entitled to a settlement, and to a recovery of the amount of said payments in excess of the principal, to wit, $309.75. Abbott v. Loan Assn., 86 Texas, 467; Loan Co. v. Stone, 46 S. W. Rep., 67; Loan Assn. v. Keller, 50 S. W. Rep., 183; Crenshaw v. Hedrick, 47 S. W. Rep., 71; Rodgers v. Assn., 55 S. W. Rep., 383; Arnold v. MacDonald, 55 S. W. Rep., 529; Dunman v. Harrison, 41 S. W. Rep., 499; Assn. v. Bessonette, 48 S. W. Rep., 52; Loan Assn. v. Goforth, 57 S. W. Rep., 700.

GAINES, CHIEF JUSTICE.—This suit was brought by defendants in error against plaintiff in error to cancel a certain contract of indebtedness and to recover back money alleged to have been paid by them in excess of the sum legally due.

The plaintiff in error is an incorporated building and loan association. By the original contract in controversy, the plaintiff in error bound itself to cause a house to be built for defendants in error upon a certain lot in the city of Denton, upon terms and conditions not necessary to be mentioned, for the sum of $1000. The transaction seems to have been a loan in effect and was so treated upon the trial of the case. The defendant in error, J. T. Jones, having become the owner of twenty shares of stock in the association, promised in writing to pay monthly $7 on his shares of stock and $1 to go to a contingent fund until the maturity of such shares, and also $8.33⅓ per month as interest on the debt. The by-laws of the association, which were made a part of the contract, provided that upon the maturity of

the stock it should cancel the debt. The contract also provided for a mechanic's lien to secure the indebtedness. It seems that according to the by-laws the principal of the debt matured at all events in six years.

The defendants in error after setting out the contract, alleged that the provisions in the contract for the stock and the payment of the installments thereon and the payments upon the contingent fund therein provided for were but devices to conceal usury, and that all payments, whether upon stock or to the contingent fund or as interest, should be applied to the extinguishment of the principal of the debt. They also alleged the payments amounted to "over $1300." They prayed that the note be canceled and that they have a judgment for all payments over $1000.

The defendant pleaded a general denial and also pleaded at length the by-laws of the association, showing its plan of operation and also the nature of the contract in question, and denied that either the stock or the payments upon the contingent fund was a device to evade the laws against usury, and prayed for a judgment for the debt as claimed by them and a foreclosure of its lien upon the lot upon which the house was erected. As to the payments upon the contingent fund, they also specially pleaded that that element of the contract, if usury at all, had been purged by a subsequent written agreement entered into between the parties by which it was stipulated that the payments which had been made upon that amount should be credited upon the principal of the debt, and that the subsequent monthly payments of interest should be correspondingly reduced. The contract was set out in the petition in haec verba and its execution was not denied under oath. It was also introduced in evidence.

There was a verdict and judgment in favor of the plaintiffs in the trial court and the judgment was affirmed upon appeal.

We are of opinion that there was error in the charge of the court. The jury was instructed in effect: (1) That if they found the stock taken by the plaintiffs in the association and the loan were one transaction and that the stock was a mere device to conceal usury, they would find the contract usurious; (2) that if they found the stock to be genuine but found that the contingent fund was a device to conceal usury, they would also find the contract usurious; but (3) if they did not find the stock a scheme to evade the usury laws, they should find the contract not usurious, unless they found the provision for payment of the contingent fund usurious; and (4) if they found the contract usurious, they should find for plaintiffs. Nowhere does the charge mention the second contract by which it was attempted to purge the original of usury. The proposition that if the provision for the monthly payments to the contingent fund was a scheme to evade the usury laws, the original contract was usurious, may be correct; but if a valid agreement was pleaded and proved which purged the original contract of its illegality, it was error to instruct the jury to find the contract usurious. A contract is not usurious which has been purged

of its usury. When, in addition to this, the jury were told, if they found the contract usurious, to find for the plaintiff, the effect of the charge is the same as if they had been charged expressly to disregard the second contract. If the contract was purged of usury, the charge is affirmatively erroneous and no request for a special instruction was necessary in order to raise the question upon appeal.

This brings us to the inquiry, was the second contract valid as to the interest? It was urgently insisted in argument upon the hearing that it was not, for the reason that as to the interest, it was without consideration to support it. At the time the agreement to purge the usury was entered into, if the contract was usurious, there was no legal obligation on the part of Jones, the defendant in error, to pay more than the balance which remained after deducting from the principal all payments of both principal and interest which had been made upon the debt; but it does not follow that there was not a sufficient consideration to support a new contract which freed the transaction from the taint of illegality. An imperfect or nonenforcible obligation may be a sufficient consideration to support a new promise. For example, the promise to pay a debt barred by the statute of limitation is binding. The rule is also applied to contracts voidable for usury. In England, the statute of Anne prohibited the taking of more than 5 per cent per annum as interest for the loan of money and declared all contracts which stipulated for a higher rate of interest "utterly void." In Barnes v. Hedley (2 Taun., 184), the parties had entered into a contract which was clearly usurious under that statute; but subsequently made another agreement by which it was stipulated that the excess of interest above the legal rate should be eliminated and that the debtor should pay only the principal, together with interest at the legal rate. The latter contract was held valid. In Flight v. Reed (1 Hurl & C., 703) the same court went a step further. There, while the usury laws were in force, the parties entered into a contract which was usurious, and after their repeal, made a new agreement by which the debtor promised to pay the debt and interest as originally contracted. The second contract was held valid. One of the judges dissented, but conceded the rule as laid down in Barnes v. Hedley, supra. The doctrine of Flight v. Reed would seem to be questionable. See also James v. Rice, 5 De G. M. & G., 461. The ground upon which it is held that a contract which can not be enforced may be a sufficient consideration for a new promise is thus stated by Baron Parke in the case of Earle v. Oliver (2 Ex., 70), and is frequently quoted as a correct exposition of the doctrine: "The principle of the rule laid down by Lord Mansfield is, that where the consideration was originally beneficial to the party promising, yet if he be protected from liability by some provision of the statute or common law meant for his advantage, he may renounce the benefit of that law; and if he promises to pay the debt, which is only what an honest man ought to do, he is then bound by the law to perform it." Bishop states the rule more broadly as follows: "The doctrine is familiar that no man is compellable to stand on a

right which the law gives him. He can always waive it, if he chooses. And the rule applies equally to a right conferred by the common law, by a statute, and by a written constitution." Bish. on Con., sec. 94. We have cited only cases from the courts of England but the rule in the American courts is the same. We cite some of the cases: Kilbourn v. Bradley, 3 Day (Conn.), 356; Warwick v. Dawes, 26 N. J. Eq., 548; De Wolf v. Johnson, 10 Wheat., 367; Masterson v. Grubbs, 70 Ala., 406; Phillips v. Building Assn., 53 Iowa, 719. To these many others might be added, but the statute in some of the States where the rule has been announced does not expressly make the contract void either as to the principal or interest.

For the error pointed out, the judgment must be reversed; and we have had some doubt whether we ought not to render judgment here for the plaintiff in error. We do not see that, in regard to the question of usury growing out of the stipulations for the payments on the stock purchased by the defendant in error, the case can be distinguished from that of the International Building and Loan Association v. Abbott, 85 Texas, 220. But we have concluded that it is proper to remand the cause in order that the defendants in error may show, if they can, that the stock was merely simulated, and therefore a device to cover usury. Should they fail to do this, the court should instruct a verdict for the plaintiff in error. See Interstate Building and Loan Assn. v. Goforth, ante, p. 259.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*